United States District Court
Southern District of Texas
**ENTERED**
March 31, 2017
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE  WILSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-CV-0436 |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| OF TEXAS, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This insurance benefits case is before the Court on the Motion for Summary Judgment ("Motion" or "Motion for Summary Judgment") filed by Defendant Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation ("BCBS") [Doc # 17].  Plaintiff Elaine Wilson ("Wilson") has filed a Response [Doc. # 22], to which BCBS has replied [Doc. # 27].  Also pending is BCBS's motion to strike certain material Wilson has included in her opposition to the Motion because it is outside the administrative record.  *See* Motion to Strike Summary Judgment Evidence [Doc. # 26].  Wilson has filed a Response [Doc. # 28], and BCBS, a Reply [Doc. # 29].   The Court has carefully reviewed the Motions, the parties' arguments and submissions, the administrative record, and the applicable legal authorities.  Based on this review, the Court **grants** BCBS's Motion to Strike Summary Judgment Evidence and Motion for Summary Judgment.

## I.      BACKGROUND

### A.      The Group Health Plan

BCBS insures Wilson under group health plan 110542 ("Plan"), which is

sponsored by Wilson's employer, Cameron Kinston, LLC.[1]  The Plan is recognized under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and provides coverage for, among other things, inpatient hospital expenses, medical and surgical expenses, and preventative care.[2]  The Plan specifies that coverage does not extend to, in relevant part, the following:

1. Any services or supplies which are not Medically Necessary and essential to the diagnosis or direct care and treatment of a sickness, injury, condition, disease, or bodily malfunction.

* * * *

23. Any services or supplies provided for reduction of obesity or weight, including surgical procedures, even if the Participant has other health conditions which might be helped by a reduction of obesity or weight.[3]

The Plan specifies that "Medically Necessary" services and supplies are those that are covered under the Plan and:

1. Essential to, consistent with, and provided for the diagnosis or the direct care and treatment of the condition, sickness, disease, injury, or bodily malfunction; and

2. Provided in accordance with and are consistent with generally accepted standards of medical practice in the United States …

* * * *

The medical staff at BCBS[] shall determine whether a service or supply is Medically Necessary under the Plan … [a]lthough a

---

[1]  *See* Administrative Record ("AR") [Doc. # 30], at 2-27 (employer application), 30-150 (health plan no. 110542 ("Plan")); First Amended Complaint [Doc. # 14], at 1.  The parties agreed to file the AR under seal.  *See* Joint Motion to File Administrative Record Under Seal [Doc. # 16].  All citations to the AR refer to the page numbers stamped on the lower right corner of each page of the AR and preceded by the prefix "BCBSTX."

[2]  *See* AR [Doc. # 30], at 36-39.

[3]  Plan, AR [Doc. # 30], at 87-88.

Physician … or Professional Other Provider may have prescribed treatment, such treatment may not be Medically Necessary within this definition.[4]

The Plan provides BCBS discretion to interpret the Plan's provisions and to make eligibility and benefit determinations.[5]   Such discretion extends to resolving interpretive ambiguities in the Plan, if any.  *See McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014) (citing *Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 365 (5th Cir. 2013)).

**B.     Preauthorization Requests and Denials**

In September of 2014, Wilson consulted with Dr. Gulchin Ergun regarding a number of symptoms, including gastroesophageal reflux disease ("GERD") and chronic heartburn.[6]   Dr. Ergun and Wilson discussed Wilson's prior medical history, including an allegedly unsuccessful 2008 surgery intended to repair Wilson's hiatus hernia, a condition, apparently connected to Wilson's GERD,[7] in

---

[4]      *See id.* at 102.

[5]      The General Provisions of the Plan specify that

> 6.     The Employer has given BCBSTX the authority and discretion to interpret the Health Benefit Plan provisions and to make eligibility and benefit determinations.

General Provisions, Plan, AR [Doc. # 30], at 131.

[6]      *See* Plaintiff's Response to Defendant's Motion for Summary Judgment ("Wilson Response") [Doc. # 22], at 2; AR [Doc. # 31] at 178.

[7]      *See* Esophageal Manometry Report, dated January 5, 2010, in Preauthorization Request, AR [Doc.# 31], at 189 (noting, in connection with a procedure performed on Wilson and supervised by Dr. Gulchin Ergun, that the suspected hiatal hernia is consistent with "peristaltic dysfunction secondary to GERD.")

which the stomach is displaced upward into the diaphragm.[8]  Wilson alleges that the 2008 surgery ultimately failed to restrain her stomach's displacement.[9]

Dr. Ergun referred Wilson to Dr. Patrick Reardon, a bariatric surgeon, in connection with Wilson's hiatal hernia.[10]  On December 22, 2014, Dr. Reardon faxed BCBS a preauthorization request ("December 22 Preauthorization Request"), seeking approval under the Plan to perform a laparoscopic gastric bypass surgery (the "Procedure") on Wilson.[11]  The December 22 Preauthorization Request appears to consist of a fax cover sheet that requested authorization for "CPT Code 43644," the code for laparoscopic gastric bypass surgery,[12] and documentation chronicling Wilson's treatment under Dr. Ergun, assessments by Dr. Reardon, and Wilson's 2008 fundoplication procedure.[13]  The next day, Dr. Reardon submitted a second, largely identical preauthorization request to BCBS ("December 23 Preauthorization Request").[14]  The December 23 Preauthorization Request, unlike the December 22 Preauthorization Request, also included a form cover sheet on

---

[8]     *See* Wilson Response [Doc. # 22], at 2; Operative Report re 2008 Operation, undated, in Preauthorization Request, AR [Doc. # 31], at 197.

[9]     *See* Wilson Response [Doc. # 22], at 4; AR [Doc. # 31] at 178.

[10]    *See* Patient History Report, dated December 8, 2014, in Preauthorization Request, AR [Doc. # 31], at 210 (Wilson's stated purpose for meeting with Dr. Reardon: "Referred by Dr. Ergun for previous failed incarcerated hiatal surgery which includes esophagitis."); Wilson Response [Doc. # 22], at 3.

[11]    *See* December 22 Preauthorization Request, AR [Doc. # 31], at 176; BCBS Motion [Doc. # 17], at 3.

[12]    *See* December 22 Preauthorization Request, AR [Doc. # 31], at 176; BCBS Motion [Doc. # 17], at 3; Wilson Response [Doc. # 22], at 3.

[13]    *See* December 22 Preauthorization Request, AR [Doc. # 31], at 176-229.

[14]    *See* December 23 Preauthorization Request, AR [Doc. # 31], at 231.

which Dr. Reardon specified the following diagnoses in connection with the Procedure: esophageal reflux, reflux esophagitis, and incisional hernia.[15]   On December 23, 2014, BCBS notified Dr. Reardon that "the proposed procedure 43644 is a contract exclusion.  No benefits are available for the procedure."[16]

On January 22, 2015, Wilson formally appealed BCBS's preauthorization denial.[17]   Wilson asserted in her appeal letter that she required the Procedure to repair a "failed paraesophageal hernia," among other things, and not to treat obesity.[18]  BCBS notified Wilson by letter dated January 30, 2015, that BCBS had denied her appeal.[19]  Both Wilson and her husband called BCBS on February 3, 2015, and were informed that the denial was final.[20]   BCBS subsequently sent

---

[15]     *See id.*; Wilson Response [Doc. # 22], at 3.

[16]     *See* Letter from BCBS to Dr. Patrick Reardon, dated December 23, 2014 ("Preauthorization Denial"), AR [Doc. # 32], at 337.   It is unclear whether BCBS was responding to Dr. Reardon's December 22 or December 23 request.

[17]     *See* Letter from Elaine Wilson to BCBS, dated January 22, 2015, AR [Doc. # 32], at 335.   Wilson points out that her husband and her insurance broker each had contacted BCBS a few days earlier to urge BCBS to reconsider, explaining, in essence, that the proposed stomach bypass was intended to repair Wilson's hernia. *See* Record of call from Roy Wilson to BCBS, dated January 14, 2015, AR [Doc. # 32], at 307; Record of call from Jennifer Ellington to BCBS, dated January 20, 2015 [Doc. # 32], at 309.   In his call Roy Wilson stated that "the only code that [Dr. Reardon] can put for a stomach bypass is a code that BCBS designates for obesity.  My wife is not obese.  The fear is that it will continue to come undone if she doesn't have this done."   Record of call from Roy Wilson to BCBS, dated January 14, 2015, AR [Doc. # 32], at 307.

[18]     *See* Letter from Elaine Wilson to BCBS, dated January 22, 2015, AR [Doc. # 32], at 335.

[19]     *See* Letter from BCBS to Elaine Wilson, dated January 30, 2015, AR [Doc. # 32], at 344 ("[a]fter review, we have determined that procedure code 43644 … is not a benefit of the contract … .")

[20]     *See* Record of calls to BCBS on February 3, 2015, AR [Doc. # 32], at 316-17.

Wilson a letter advising her that she had exhausted the internal appeal process available under the Plan.[21]

Wilson lodged a complaint regarding BCBS's denial with the Texas Department of Insurance ("TDI"), contending that the Procedure was intended not for weight loss, but rather to repair her hiatal hernia.[22]   Wilson also asserted that the only procedural code available to Reardon to designate the Procedure was not an approved code under the Plan.[23]   Wilson requested a "peer-to-peer" review regarding the proposed Procedure and medical records on file.  The TDI contacted BCBS regarding Wilson's complaint on February 20, 2015.[24]   In response, BCBS explained that "any bariatric service or surgery is a contract exclusion on [sic] this policy" and that peer to peer reviews are unavailable in connection with contract exclusion denials.[25]

On March 19, 2015, Wilson underwent the Procedure.[26]   She subsequently submitted a claim for benefits.  BCBS denied Wilson's claim on June 11, 2015, stating that the Plan did not cover the Procedure.[27]

---

[21]   *See* Letter from BCBS to Elaine Wilson, dated February 18, 2015, AR [Doc. # 32], at 348.

[22]   *See* Letter from Texas Department of Insurance ("TDI") to BCBS, dated February 20, 2015, AR [Doc. # 32], at 354 (relaying details of Wilson's complaint).

[23]   *See id.*

[24]   *See id.* at 350-55.

[25]   *See* Fax from BCBS to TDI, dated February 26, 2015, AR [Doc. # 32], at 356-57. The Plan does not contain a blanket exclusion for bariatric surgery, contrary to what BCBS wrote to the TDI.

[26]   *See* Denial of Coverage, AR [Doc. # 32], at 402.

[27]   *See id.*

6

### C.    Procedural History

Wilson filed suit on January 12, 2016, in the 133rd District Court of Harris County, Texas, asserting only state law causes of action.[28]   BCBS removed the action to this Court on February 19, 2016, citing both federal question and diversity jurisdiction.[29]   BCBS contended that Wilson had not exhausted her administrative remedies with respect to the denial of claim for benefits, and agreed to toll the case until she did so.[30]   The Court stayed and administratively closed the case on May 4, 2016, for that purpose.[31]

In furtherance of Wilson's appeal of the denial of claim for benefits, Dr. Reardon provided BCBS with a letter in which he requests BCBS approve coverage for the Procedure for Wilson.[32]   In the letter, Dr. Reardon explained that:

> This letter documents the medical necessity for this surgery … Wilson was a 59 year old female with diagnosis of Gastroesophageal Reflux Disease, Esophagitis, Morbid Obesity, Hypertension, also history of esophageal dysmotility when I first examined her on 12/08/2014.  Her medical history consists of hiatal hernia repair, 360 Fundoplication in 2008 with symptoms of heartburn and reflux.  Recent EGD shows recurrent Hiatal Hernia as well as severe [GERD] and esophagitis. Manometry reports shows [sic] patient only able to swallow 10% of

---

[28]    *See* Plaintiff's Original Petition and Request for Disclosure, Exh. 3 to Appendix to Notice of Removal [Doc. # 1-1], at 3-6, at ECF 6-9.

[29]    *See* Notice of Removal [Doc. # 1], at 1.

[30]    *See* Joint Discovery/Case Management Plan [Doc. # 5], at 2 ¶ 3, 4-5 ¶ 14.  Wilson took the position that all administrative remedies necessary to pursue litigation had been exhausted, but nevertheless agreed to submit an additional appeal.  *See id.* at 5 ¶ 14.

[31]    *See* Hearing Minutes and Order, dated May 2, 2016 [Doc. # 8].

[32]    *See* Letter from Patrick Dr. Reardon to BCBS, dated July 27, 2016, AR [Doc. # 32], at 384-85.

the time.  Also with being morbidly obese, hypertension and elevated cholesterol, I strongly recommend that you consider approving the [Procedure] as the only other surgical option for Mrs. Wilson.[33]

BCBS referred the appeal to MES Peer Review Services for review.[34]  Dr. George Angus, a physician who reportedly specializes in general surgery with an expertise in bariatric medicine, performed the review.[35]  Dr. Angus was asked to review Wilson's medical records and assess whether the Procedure was appropriate and medically necessary for Wilson's clinical situation or should be considered a contract exclusion.[36]  Dr. Angus concluded that the Procedure was for the reduction of weight; was not the standard of care for GERD; is considered a contract exclusion; and was not medically necessary.[37]  Specifically, Dr. Angus concluded that:

> [T]he member has a BMI of 39 $kg/m^2$ and her weight is likely exacerbating her GERD.  The [Procedure] is not a standard of care for the management of reflux disease and as such is not appropriate for her GERD which seems to be most symptomatic as per clinical records.  Despite the claim that the [Procedure] is not for obesity, given the member's BMI[,] the procedure is for obesity in the hope that will reduce her GERD as well as her weight . . . . As such the proposed gastric bypass with a BMI of 39 kg/m2 and diaphragmatic

---

[33]    *Id.*

[34]    *See* Peer Review Report, dated September 29, 2016 ("Dr. Angus Report"), AR [Doc. # 32], at 386.

[35]    *See id.* at 386-87; Letter from BCBS to Dr. Patrick Reardon, dated September 30, 2016 ("Denial Letter"), AR [Doc. # 32], at 392.

[36]    *See* Dr. Angus Report, AR [Doc. # 32], at 386.

[37]    *See id.*

hiatal hernia is considered a contract exclusion and is not considered medically necessary.[38]

BCBS affirmed its denial of Wilson's claims on September 30, 2016.[39]

Wilson's administrative remedies thus exhausted, the Court, upon the parties' motion, reinstated this case on November 1, 2016.[40]   Wilson filed a First Amended Complaint [Doc. # 14] asserting claims under ERISA for wrongful denial of benefits, 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty, *id.*, § 1132(a)(3).[41]   BCBS contends that it properly denied Wilson's claim for benefits and that Wilson's claim for breach of fiduciary duty cannot proceed.[42]   BCBS now

---

[38]     *Id.*

[39]     *See* Denial Letter [Doc. # 32], at 392-93.  The Denial Letter, which incorporated Dr. Angus's report near-verbatim, stated in part:

Decision: Based on the review of the medical records, the [Procedure] . . . is not appropriate and not medically necessary for this patient's clinical condition and is considered a contract exclusion.

Rationale: . . . Despite the claim that the [Procedure] is not for obesity, given the member's BMI[,] the procedure is for obesity in the hope that will reduce her GERD as well as her weight . . . .   As such the proposed gastric bypass with a BMI of 39 kg/m2 and diaphragmatic hiatal hernia is considered a contract exclusion and is not considered medically necessary.

*Id.*

[40]     *See* Joint Motion to Reinstate [Doc. # 11]; Order, dated November 1, 2016 [Doc. # 12].

[41]     *See* First Amended Complaint [Doc. # 14], at 3-4 ¶¶ 9-12.  Wilson also asserted a state law cause of action for "negligence and negligent misrepresentation," but has conceded that the state law claims are preempted by ERISA.  *See id.* at 4-5 ¶¶13-14; Wilson Response [Doc. # 22], at 1.

[42]     *See* BCBS Motion [Doc. # 17], at 7.

seeks summary judgment on all of Wilson's claims.[43]

## II.    <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Chambers v. Sears, Roebuck and Co.*, 428 F. App'x 400, 407 (5th Cir. 2011).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving

---

[43]    *See id.*

party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412-13 (5th Cir. 2003)). The Court is not required to accept the non-movant's conclusory allegations, speculation, or unsubstantiated assertions that are entirely unsupported or supported by a mere scintilla evidence. *Id.* (citing *Reaves Brokerage,* 336 F.3d at 413).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

Wilson brings two ERISA claims against BCBS. She alleges that she is entitled to recover benefits under the Plan and that BCBS breached fiduciary duties it owed to her. The Court considers each in turn.

### A.   Wrongful Denial of Benefits Claim

A participant or beneficiary of an ERISA plan may bring a claim "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  "This provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004).  In cases such as this one, in which the plan grants the plan fiduciary discretionary authority to interpret the terms of the plan and to render benefit decisions,[44] courts review the administrator's decisions for abuse of discretion.[45]  *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 246 (5th Cir. 2009) (citing *Stone v. UNOCAL Termination Allowance Plan,* 570 F.3d 252, 257–58 (5th Cir. 2009)).[46]  "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.* (citations and internal

---

[44]     *See supra* note 5.

[45]     The Plan specifies that BCBS is not the "ERISA 'Plan Administrator' … ." *See* 4, General Provisions, Plan, AR [Doc. # 30], at 131. BCBS is nonetheless a "fiduciary" under 29 U.S.C. § 1002(21)(A) because BCBS is vested with "discretionary authority or discretionary responsibility in the administration of [the] plan." *See* 29 U.S.C. § 1002(21)(A)(iii); *Ellis v. Liberty Assur. Co. of Boston*, 394 F.3d 262, 266 n.3 (5th Cir. 2004).  When the ERISA plan fiduciary is vested with discretionary authority under the plan, the Court's standard of review is the same as if the fiduciary were the plan administrator under 29 U.S.C. § 1002. *Ellis*, 394 F.3d at 269 n.15.

[46]     Generally, courts apply a two-step process for review of discretionary determinations by ERISA plan administrators.  *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009) (internal citations omitted).  The first step is determining whether the administrator's determination was legally correct; the second is the abuse of discretion inquiry.  *See id.*  However, courts may bypass the first step and move directly to whether the determination was an abuse of discretion.  *See Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 366 & n.22 (5th Cir. 2013).  The Court does so here.

quotation marks omitted).   "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015) (quoting *Ellis v. Liberty Life Assurance Co. of Boston,* 394 F.3d 262, 273 (5th Cir. 2004)).

"Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Hamsher v. N. Cypress Med. Ctr. Operating Co.*, 620 F. App'x 236, 239 (5th Cir. 2015) (per curiam) (unpublished) (quoting *Cooper v. Hewlett–Packard Co.,* 592 F.3d 645, 652 (5th Cir. 2009)).   "'A decision is arbitrary if it is made without a rational connection between the known facts and the decision.'"  *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014) (quoting *Holland*, 576 F.3d at 246).   "A court's 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.'"  *Id.* (quoting *Holland*, 576 F.3d at 247).

A structural conflict of interest exists when the plan administrator "both evaluates claims for benefits and pays benefits claims." *Truitt v. Unum Life Ins. Co. of Am.,* 729 F.3d 497, 508 (5th Cir. 2013), *cert. denied,* —— U.S. ——, 134 S. Ct. 1761, 188 L. Ed. 2d 593 (2014) (quoting *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112 (2008)).  Such a conflict of interest is "'but one factor among many that a reviewing judge must take into account' in determining whether an abuse of discretion occurred." *See Burell v. Prudential Ins. Co. of America*, 820 F.3d 132, 138 (5th Cir. 2016).[47]

Finally, "[o]nce the administrative record has been determined, the district court may not stray from it except for certain limited exceptions," including

---

[47]     Wilson does not argue that BCBS's conflict of interest influenced its denial.

evidence that "assists the district court in understanding the medical terminology or practice related to a claim."  *See Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) (citing *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008)).

BCBS denied Wilson's claim because BCBS determined that the Procedure was for reduction of obesity or weight loss, and was not medically necessary to address Wilson's condition.[48]  Wilson argues that BCBS abused its discretion in making those two findings.  BCBS, in turn, asserts that its conclusions are supported by substantial evidence in the administrative record.  The Court agrees with BCBS.

*Whether the Procedure Was for Reduction of Obesity or Weight.*— BCBS's determination that the Procedure was provided for reduction of obesity or weight is supported by substantial evidence in the administrative record.   For example, Dr. Reardon, Wilson's surgeon, requested BCBS approve the Procedure for reasons that included explicit reference to Wilson's weight:

> [Wilson's] medical history consists of hiatal hernia repair, 360 [f]undoplication in 2008 with symptoms of heartburn and reflux. Recent EGD shows recurrent [h]iatal [h]ernia as well as severe [GERD] and esophagitis.  Manometry reports shows patient only able to swallow 10% of the time.  Also with being morbidly obese, hypertension and elevated cholesterol, I strongly recommend that you consider approving the [Procedure] as the only other surgical option for Mrs. Wilson.[49]

Dr. Reardon's letter, while somewhat scattershot, is some support for BCBS's

---

[48]    *See* Denial Letter, AR [Doc. # 32], at 392-93; *supra* Section I.I.

[49]    *See* Letter from Dr. Patrick Reardon to BCBS, dated July 27, 2016, AR [Doc. # 32], at 384-85.

14

determination that the Procedure was intended to address Wilson's morbid obesity. Reinforcing this position is that Wilson's medical records reveal that she and Dr. Reardon discussed two options: the Procedure and fundoplication, the procedure she underwent in 2008.[50]  According to Dr. Reardon, Wilson expressed interest in the former "given recent [increase] in [blood pressure] and cholesterol as well as obesity."[51]

Even if that were not the case, the report of Dr. Angus, the physician who considered Wilson's appeal, provides substantial evidence in support of BCBS's decision.  *See Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007) (finding that report of insurer's physician consultant, which was based on claimant's medical records and reached a different conclusion than that of claimant's treating physician, provided substantial evidence in support of insurer's decision).  Dr. Angus reviewed Wilson's medical records and concluded that "[d]espite the claim that the gastric bypass is not for obesity, given [Wilson's] BMI the procedure is for obesity in the hope that will reduce her GERD as well as her weight."[52]  BCBS relied on Dr. Angus's findings.  Indeed, BCBS cited Dr. Angus's conclusions *verbatim* as its rationale for rejecting Wilson's appeal of the denial of her claim for benefits.[53]  It did not abuse its discretion in this regard.  *See Gothard*, 491 F.3d at 249 (noting the Fifth Circuit has found "an administrator does not abuse its discretion when it relies on the medical opinion of a consulting physician whose opinion conflicts with the claimant's treating physician[,]" and citing cases);

---

[50]      *See* Dr. Reardon Assessment, AR [Doc. # 31], at 281.

[51]      *See id.*

[52]      *See* Dr. Angus Report, AR [Doc. # 32], at 386.

[53]      *See* Denial Letter, AR [Doc. # 32], at 393.

*cf. Dupre v. Emp. Ben. Servs. of La., Inc.*, 394 F. App'x 115, 118-19 (5th Cir. 2010) ("Here, the administrator evaluated the facts in both physicians' letters and concluded that the surgery was not a last resort for treating GERD . . . The *administrator's* reasonable interpretation of the plan . . . found that gastric bypass surgery is connected to obesity and weight reduction.   We defer to the administrator's judgment." (emphasis in original)).

   ***Whether the Procedure was Medically Necessary.*—** Dr. Angus also found that the Procedure "is not a standard of care for the management of reflux disease and as such is not appropriate for [Wilson's] GERD . . . and is not considered medically necessary."[54]   Wilson objects to Dr. Angus's conclusion on three grounds: (1) Dr. Angus cites references that, Wilson claims, discuss bariatric surgery in the context of obesity rather than failed hernia repairs; (2) Dr. Angus "makes a conclusory assertion that bypass surgery is not a standard of care for GERD," and "such a conclusory statement is not 'substantial evidence[]'"; and (3) Dr. Angus assumes that "any claim by an obese insured that could result in weight loss must be *for the purpose* of weight loss."[55]   These objections are unavailing.

   BCBS's reliance on Dr. Angus's conclusion is "'adequate to support a conclusion.'"   *See Ellis,* 394 F.3d at 273 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)); *Gothard*, 491 F.3d at 250 ("plan fiduciaries are allowed to adopt one of two competing medical views").   Certainly, it is not that "a plan fiduciary has no obligation to consider the basis of the expert opinion on which they are relying at summary judgment, or that a fiduciary may rely on an opinion that is in plain conflict with medical records."   *See Gothard*, 491

---

[54]     *See* Dr. Angus Report, AR [Doc. # 32], at 386.

[55]     *See* Wilson Response [Doc. # 22], at 10-11.

F.3d at 250.  Here, BCBS, the fiduciary, made a decision with evidentiary support in the medical records and BCBS relies on adequately grounded expert opinion. Dr. Angus is a board certified general surgeon with added expertise in bariatric medicine,[56] and offered his opinion of the propriety of the Procedure with respect to Wilson specifically, after reviewing her medical records and with reference to medical literature.[57]  *Cf. id.* at 249 (administrator does not abuse its discretion in relying on medical opinion of a consulting physician who only reviews medical records and never physically examines the claimant).  Further, as noted above, his conclusions do not plainly conflict with Wilson's medical records and the administrative record.

Wilson also argues that "all medical indications are that the surgery is necessary" and asserts that the Procedure is within the standard of care for her condition.[58]  She cites and attaches to her Response an article entitled "*Current Trends in the Management of Gastroesophageal Reflux Disease: a Review*" (the "Article").[59]  BCBS moves to strike the Article because it was not presented to the fiduciary during the administrative review process.[60]  "When assessing factual questions in benefits cases, 'a long line of Fifth Circuit cases stands for the proposition that . . . the district court is constrained to the evidence before the plan

---

[56]    *See* Dr. Angus Report, AR [Doc. # 32], at 387.

[57]    *See id.* at 386-87.

[58]    *See* Wilson Response [Doc. # 22], at 11 (citing article, at 6 (ECF 11)).

[59]    Sylvester Chuks Nwokediuko, *Current Trends in the Management of Gastroesophageal Reflux Disease: A Review*, 2012 ISRN Gastroenterology, Article ID 391631 (2012).

[60]    *See* Motion to Strike Summary Judgment Evidence [Doc. # 26] ("Motion to Strike").  Wilson responded [Doc. # 28], and BCBS replied [Doc. # 29].

administrator.'"   *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 312 (5th Cir. 2015) (citing *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999) (collecting cases), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008)).   "Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it."   *Vega*, 188 F.3d at 300.   Courts do not "set a particularly high bar to a party's seeking to introduce evidence into the administrative record."   *See id.*   "Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions."   *Vega*, 188 F.3d at 299.   These exceptions include evidence "that assists the district court in understanding the medical terminology or practice related to a claim . . .."   *See id.*

The Article does not meet the standard for admissibility under this line of cases.   Nothing cited by Wilson in the Article defines medical terminology or is a primer on medical practices.   The article is inadmissible and BCBS's Motion to Strike is granted.[61]

---

[61]   Another reason for exclusion is that the article is highly technical and has not been supported by necessary expert testimony.   *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); FED. R. EV. 702.   Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury.   FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).   To be admissible, an expert's proffered testimony must be both relevant and reliable.   *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).   There is no evidence it meets the necessary standards for expert opinion, no indication whether the publication, the "International Scholarly Research Network" ("ISRN"), is a peer reviewed journal, and no evidence that the views expressed by the author are recognized as authoritative.   The Court may not guess at the meaning or substance of the points and terminology in the article.

(continued…)

As additional support for her argument that the Procedure was medically necessary, Wilson cites to her own statements in the administrative record, along with those of her husband and her insurance broker.  The administrative record also contains Dr. Reardon's letter in support of Wilson's appeal for denial of benefits, which purports to "document[] the medical necessity for this surgery," references Wilson's hiatal hernia, "severe [GERD]," and morbid obesity, among other things, and states that Dr. Reardon "strongly recommend[s] that [BCBS] consider approving the [Procedure] as the only other surgical option for Mrs. Wilson."[62]  Notably, Dr. Reardon's letter does not exclude non-surgical options.[63] BCBS did not abuse its discretion in relying on Dr. Angus's assessment, including his opinions contradicting Dr. Reardon's conclusions and the lay statements of Wilson and her supporters, to determine that the Procedure was not medically necessary.  *Cf. Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (administrator need not accord special weight to the opinions of a treating physician); *Gothard*, 491 F.3d at 249-50.

BCBS determined that the Procedure was not covered by the Plan because the Procedure was for the reduction of weight or obesity and was not medically necessary for the primary condition, GERD.[64]  These determinations are supported

---

(continued…)
In any event, a review of the page Wilson cites in the Article, as well as the rest of the cited section, reveals no support for Wilson's contention that the Procedure (that is, bariatric surgery) was medically necessary or the standard of care for GERD.  The Article refers to fundoplication, not bariatric surgery.  Article, Exhibit E to Wilson Response [Doc. # 22-4], at 7 (ECF 11).

[62]     *See* Letter from Dr. Patrick Reardon to BCBS, dated July 27, 2016, AR [Doc. # 32], at 384-85.

[63]     *See id.*

[64]     *See* Denial Letter, AR [Doc. # 32], at 393.

by substantial evidence in the administrative record, which, in this context, means "'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Hamsher*, 620 F. App'x at 239 (quoting *Cooper,* 592 F.3d at 652 (5th Cir. 2009)). This Court cannot second-guess BCBS's supportable and reasoned conclusion. BCBS has not been shown to have abused its discretion when it denied Wilson's claim for benefits under the Plan.

### B. Fiduciary Duty

In the alternative, Wilson alleges that BCBS breached its fiduciary duty in violation of 29 U.S.C. § 1132(a)(3) by "misrepresenting to Wilson" and, through its alleged misrepresentations, prohibiting Wilson "from exercising a Plan benefit." BCBS argues that Wilson's fiduciary duty claim is at base a claim for denial of benefits under the Plan and must be brought under 29 U.S.C. § 1132(a)(1)(B).

Section 1132(a)(3) authorizes a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). However, a claim for breach of fiduciary duty under ERISA cannot be premised solely on an insurer's denial of benefits under an applicable health plan. *See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 n.10 (5th Cir. 2013) ("[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to § 502(a)(3)." (quoting *McCall v. Burlington N./Sante Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000))).

Wilson claims that BCBS's alleged misrepresentation "prohibited Plaintiff from exercising a Plan benefit. Namely, that Plaintiffs' [*sic*] health care was excluded when it was not."[65]  Her claim is therefore a claim for denial of benefits under the Plan, which the Fifth Circuit requires be brought under § 1132(a)(1)(B). *See id.*; *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998).

Wilson contends that she may plead claims under both § 1132(a)(1)(B) and § 1132(a)(3) so long as she elects a single remedy before entry of judgment. Invoking *Varity Corp. v. Howe*, 516 U.S. 489 (1996), for the proposition that § 1132(a)(3) provides claimants recourse if no other appropriate equitable relief is available, Wilson asserts that granting summary judgment in favor of BCBS on Wilson's § 1132(a)(3) claim would "prematurely narrow" her case and deprive her a potentially necessary remedy.  If her claim under § 1132(a)(1) is dismissed, Wilson argues, relief under § 1132(a)(3) may be appropriate.

Wilson's reliance on *Varity* is misplaced.  In *Varity,* the Supreme Court held that a class of ERISA beneficiaries had stated a claim for injunctive relief under § 1132(a)(3) and reinstated them to their former employer's welfare benefit plan.  *See Varity*, 516 U.S. at 504-14.  In so holding, the Supreme Court emphasized that § 1132(a)(3) is a "catchall" provision that provides relief only for injuries that are not otherwise adequately addressed under ERISA.  According to the Court, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  *Id.* at 515.

Following *Varity*, the Fifth Circuit has concluded that if a plaintiff can pursue plan benefits under § 1132(a)(1), she has an adequate remedy that bars a claim under § 1132(a)(3) premised on the same denial.  *See McCall*, 237 F.3d at

---

[65]     First Amended Complaint [Doc. # 14], at 4 ¶ 11.

21

512; *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (affirming summary judgment against plaintiff on his claim for breach of fiduciary duty under § 1132(a)(3) because plaintiff had adequate redress under § 1132(a)(1)(B) — despite plaintiff's failure to prevail on his § 1132(a)(1)(B) claim).   Courts in this district adhere to this approach.   *See Koenig v. Aetna Life Ins. Co.*, Civil Action No. 4:13–CV–00359, 2015 WL 6473351, at *4 (S.D. Tex. Oct. 27, 2015) (holding on summary judgment that Fifth Circuit precedent precludes plaintiff from simultaneously proceeding under § 1132(a)(1)(B) and § 1132(a)(3)); *see also Sleep Lab at West Houston v. Texas Children's Hosp.,* Civil Action No. H–15–0151, 2015 WL 3507894, at * 10 (S.D. Tex. June 2, 2015) (ruling on a motion to dismiss, court held that "claims for money damages under § 1132(a)(1)(B) arising from wrongful denial of benefits cannot coexist with claims for equitable relief under § 1132(a)(3)"); *Lopez v. Liberty Life Assur. Co. of Boston*, Civil Action No. H–13–2460, 2013 WL 5774878, at *4 (S.D. Tex. Oct. 24, 2013) (on motion to dismiss, holding plaintiff failed to state a claim under § 1132(a)(3) because plaintiff had adequate redress through right to initiate action under § 1132(a)(1));   *Adams v. Prudential Ins. Co. of Am.,* No. 05–2041, 2005 WL 2669550, at *2 (S.D. Tex. Oct. 19, 2005) (same).

Wilson has the authority to assert a claim for the alleged improper denial of benefits under § 1132(a)(1)(B).   Wilson may not also proceed under a § 1132(a)(3) breach of fiduciary duty theory of relief.   *See LifeCare Mgmt. Servs. LLC*, 703 F.3d at 846 n.10.[66]

---

[66]   BCBS also contends that Wilson fails to identify any such misrepresentations or any evidence in support of such misrepresentations.   Because the Court finds that Wilson's breach of fiduciary claim is actually a denial of benefits claim under the Plan, and thus must be brought under § 1132(a)(1)(B), the Court does not reach BCBS's second argument.   It is noted in passing, however, that to the extent Wilson relies on a contention that BCBS made a misrepresentation to the TDI

(continued…)

### C.     Attorney's Fees

BCBS seeks recovery of attorney's fees and costs from Wilson pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).[67]  The Court in its discretion may award attorney's fees to a plaintiff that prevails on an ERISA claim.  *See id.; Tenet Healthcare Ltd. v. UniCare Health Plans of Texas, Inc.*, Civil Action No. H-07-3534, 2008 WL 5101558, at *17 (S.D. Tex. Nov. 26, 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 820-21 (5th Cir. 1997)).  The Fifth Circuit suggests that the district court consider five factors in its analysis:

(1)     the degree of the opposing parties' culpability or bad faith;

(2)     the ability of the opposing parties to satisfy an award of attorney's fees;

(3)     whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances;

(4)     whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)     the relative merits of the parties' positions.

*Wegner,* 129 F.3d at 821 (internal citations omitted); *see also Life Care Mgmt. Servs.*, 703 F.3d at 847 (recognizing that the Supreme Court's decision in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254–55 (2010), makes application of the five factors discretionary).

---

(continued…)
when it stated that the Plan contained a blanket exclusion for bariatric surgery, the statement is insufficient to state a § 1132(a)(3) claim.

[67]     *See* BCBS Motion [Doc. # 17], at 16.

The Court considers all five factors and finds that BCBS is not entitled to recovery of attorney's fees.  First, there is no evidence that Wilson brought this claim in bad faith and this factor weighs against a fee award.  Second, there is no evidence of whether or not Wilson is able to satisfy an award of attorney's fees. The third factor is whether an award of attorney's fees against Wilson would deter her or others acting under similar circumstances from bringing such claims for benefits under § 1132(a)(1)(B).  The Court is unpersuaded that deterrence would result from a fee award in this case, or that there is a need for such deterrence. Wilson advocated a reasoned position that was entitled to judicial review.  Fourth, there is no evidence that BCBS's recovery of attorney's fees would benefit others besides itself.  Nor did this case require the Court to adjudicate any significant legal question regarding ERISA as a result of this case.  This factor weighs against granting attorney's fees. Finally, the Court finds that each party asserted certain valid and certain unpersuasive points.    While Wilson did not prevail, her fundamental position was not without some basis.  This factor tips in favor of BCBS.  Considering all five factors, BCBS has not met its burden to show a good basis for an award of attorney's fees in this case.  The Court exercises its discretion to deny an award of attorney's fees.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, Defendant Blue Cross Blue Shield has met its burden to show that it did not abuse its discretion in denying Plaintiff Elaine Wilson's claim for benefits.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Strike Summary Judgment Evidence [Doc. # 26] is **GRANTED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support [Doc. # 17] is **GRANTED** with respect to Wilson's ERISA claims, state

law claim, and Defendant's request for costs of court, and **DENIED** regarding Defendant's request for attorney's fees.

A separate Final Judgment will be entered.

SIGNED at Houston, Texas, this **31**$^{st}$ day of **March, 2017**.


NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2016\0436MSJ.docx  170331.0914